**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Norfolk Division**

ARLANDO R. HARRIS, #289056

          Petitioner,

v.                                              ACTION NO. 2:04cv511

GENE M. JOHNSON, Director,
Virginia Department of Corrections,

          Respondent.

---

**UNITED STATES MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

This matter was initiated by petition for writ of habeas corpus under 28 U.S.C. § 2254. The matter was referred to the undersigned United States Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and (C), Rule 72(b) of the Federal Rules of Civil Procedure, and Rule 72 of the Local Civil Rules of the United States District Court for the Eastern District of Virginia.

**I. STATEMENT OF THE CASE**

**A. Background**

Petitioner Arlando R. Harris was convicted of voluntary manslaughter and use of a firearm during the commission of a felony in a jury trial in the Circuit Court of the County of King William on March 15, 2000. On June 7, 2000, Harris was sentenced to ten years imprisonment for voluntary manslaughter and three years imprisonment for use of a firearm during the commission of a felony to be served consecutively, for a total of thirteen years

imprisonment.  The sentencing order was entered on August 2, 2000.

Harris appealed to the Court of Appeals of Virginia, which dismissed his appeal on November 8, 2000 for failing to timely file a trial transcript.  On May 11, 2001, upon considering the motion of the Commonwealth's attorney, the Court of Appeals granted leave to Harris to file an appeal.[1]  The Court of Appeals denied Harris's appeal on November 20, 2002.  Harris's subsequent appeal to the Supreme Court of Virginia was denied on May 29, 2003.

On August 12, 2004, while in the custody of the Virginia Department of Corrections at the Haynesville Correctional Center in Haynesville, Virginia, Harris executed this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  The Court conditionally filed the petition on August 26, 2004 and on September 9, 2004, the Court ordered the petition filed after receiving the $5.00 filing fee.

On October 18, 2004, the respondent filed a motion for an extension of time and an untimely Motion to Dismiss and Rule 5 Answer, accompanied by a brief in support.  On October 25, 2004, Harris filed a response to the respondent's motion to dismiss in which, inter alia, he opposed granting the respondent an extension

---

[1]Respondent states that Harris filed a petition for a writ of habeas corpus in the King William Circuit Court with the sole claim that he was denied his right of appeal.  The respondent further states that his writ was granted and that Harris again petitioned the Court of Appeals.  The Court notes that it did not receive the record of any state habeas petition filed and that there is no other mention of such a petition in the record.

of time.

## B. <u>Grounds Alleged</u>

Harris now asserts in this Court that he is entitled to relief under 28 U.S.C. § 2254 for the reasons substantially as follow:

(a) Petitioner was denied his Sixth Amendment right to a trial by jury in that the trial court enhanced his sentence beyond the state sentencing guidelines based on facts not reflected in the jury's verdict; and

(b) Petitioner's equal protection rights were violated by the Virginia statute prohibiting juveniles from having their sentences determined by a jury.

In his direct appeals in state court, Harris appealed on the grounds that: (1) the trial court erred in denying Harris's motion to set aside the verdict as being contrary to the evidence and insufficient to support the conviction and (2) the trial court abused its discretion by deviating from the sentencing guidelines without stating a just cause.

## II. <u>Motion for Extension of Time</u>

As a preliminary matter, the Court considers the respondent's motion for an extension of time to file a motion to dismiss and Rule 5 answer, accompanied by a brief in support. Harris opposes an extension of time pointing to the respondent's initial mailing of the motion to dismiss by regular mail mere days before the deadline. Harris also notes that the Local Rules state that extensions are disfavored and that the respondent moved for an

extension of time after the deadline.

In general, motions for extension of time are looked upon with disfavor. Local Rule 7(I).  In addition, the Court notes that motions for an extension of time filed after time for filing has expired are to be accompanied by a brief.  Local Rule 7(F)(2).  The respondent claims to have initially mailed the motion and supporting documents on Friday, October 8, 2004 for the deadline of Tuesday, October 12, 2004.  The Court GRANTS the respondent's motion.

### III.  <u>FINDINGS OF FACT AND CONCLUSIONS OF LAW</u>

### A.  <u>Sixth Amendment Blakely Claim</u>

### 1.  <u>Retroactivity</u>

When a federal habeas petitioner makes a claim based on a Supreme Court ruling issued after the petitioner's conviction becomes final, the petitioner must show that the Supreme Court decision announced a new rule and that the new rule is retroactive to cases on collateral review.  <u>Lilly v. United States</u>, 342 F. Supp.2d 532, 535-36 (W.D. Va. Oct. 28, 2004)(citing <u>Teague v. Lane</u>, 489 U.S. 288, 308 (1989)).

A Supreme Court decision announces a "new rule" when it is not "dictated by precedent existing at the time the defendant's conviction became final."  <u>Teague</u>, 489 U.S. at 301 (plurality opinion).  Harris relies on <u>Blakely v. Washington</u>, __ U.S. __, 124

4

S.Ct 2531 (2004)[2] in making his Sixth Amendment claim.  Blakely
appears to have announced a new rule because it was not dictated by
Apprendi v. New Jersey, 530 U.S. 466 (2000),[3] which the Court
applied in Blakely.  See Lilly, 342 F.Supp.2d at 536 n. 3 (noting
the disagreement among Courts of Appeals about the application of
Apprendi to sentencing enhancements like those in Blakely).  But
see id. at 539-40 (discussing Justice O'Connor's dissent in Blakely
that may suggest that Blakely is not a new rule).

     The rule in Blakely is not retroactive to cases on collateral
review because the Supreme Court has not declared it to be
retroactive and it does not fit the two exceptions to the Teague
doctrine of non-retroactivity of new constitutional rules of
criminal procedure.

     The Supreme Court has not made its ruling in Blakely
retroactive to cases on collateral review and in fact in Schriro v.
Summerlin, 124 S.Ct. 2519, 2525-26 (June 24, 2004), issued the same
day as Blakely, it strongly implied that Blakely, an extension of

---

     [2] Blakely held that a sentence imposed under Washington
state's sentencing scheme violated the Sixth Amendment because it
was enhanced based on judge-found facts beyond the maximum provided
in the mandatory sentencing guidelines when any fact used to
enhance a sentence must be found beyond a reasonable doubt by a
jury or admitted by the defendant.

     [3]Apprendi, held that "[o]ther than the fact of a prior
conviction, any fact that increases the penalty for a crime beyond
the prescribed statutory maximum must be submitted to a jury, and
proved beyond a reasonable doubt." 530 U.S. at 490.

_Apprendi_, is not retroactive.  _In re Dean_, 375 F.3d 1287, 1290 (11th Cir. 2004);  _Lilly_, 342 F.Supp.2d at 537-38.  In _Summerlin_, the Supreme Court determined that _Ring v. Arizona_, 536 U.S. 584 (2002), that applied _Apprendi_ to a case in which a sentence of life imprisonment was enhanced to the death penalty, was not retroactive to cases on collateral review.  _See also_ _Blakely_, 124 S.Ct. at 2548-49 (O'Connor, J., dissenting)(recognizing that the court's holding in _Summerlin_ that Ring was not retroactive, applied even more strongly to _Apprendi_).

In _Teague v. Lane_, 489 U.S. 288 (1989) a plurality of the Supreme Court stated that new constitutional rules of criminal procedure would not apply retroactively on collateral review but for two exceptions: (1) the new rule "places certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe;" (2) the new rule requires the observance of fairness safeguards that were "implicit in the concept of ordered liberty;" i.e. it is a "watershed rule[] of criminal procedure."  _Id._ at 307, 311.  The plurality noted that the second exception was extremely narrow because accuracy-enhancing procedures, such as the right to counsel,  are "so central to an accurate determination of innocence or guilt, we believe it unlikely that many such components of due process have yet to emerge.  _Id._ at 313; _accord_ _Graham v. Collins_, 506 U.S. 461, 478 (1993); _O'Dell v. Netherland_, 521 U.S. 151, 157 (1997).  The

Supreme Court, despite considering at least eleven new rules or proposed new rules of criminal procedure, has not yet found such a rule to be retroactive since it decided <u>Teague</u> in 1989.  <u>Lilly</u>, 342 F.Supp.2d at 538 (citing <u>United States v. Mandanici</u>, 205 F.3d 519, 529 (2d Cir. 2000).  <u>See also</u> <u>United States v. Martinez</u>, 139 F.3d 412, 418 (4th Cir. 1998).  The Fourth Circuit has found the exception applicable in only a few cases.  <u>See, e.g.,</u> <u>Adams v. Aiken</u>, 41 F.3d 175, 178-79 (1994)(applying exception to rule concerning reasonable doubt jury instructions), <u>cert. denied</u>, <u>Adams v. Moore</u>, 515 U.S. 1124 (1995), <u>reh'g denied</u>, 515 U.S. 1179 (1995).

The first <u>Teague</u> exception is clearly inapplicable, Harris's assertion notwithstanding.[4]  This exception applies only to holdings that decriminalize a petitioner's conduct,[5] <u>see</u> <u>United States v. Martinez</u>, 139 F.3d 412, 418 (4th Cir. 1998), or prohibit application of a particular punishment to a specific class of

---

[4]The Court notes that Harris errantly asserts without support that the <u>Blakely</u> rule qualifies for the first <u>Teague</u> exception because "a defendant's 6th Amendment right to trial by jury is most certainly a 'kind of conduct beyond the power of criminal lawmaking authority to proscribe' <u>Teague</u> id. at pg. 356 (sic)."  Memorandum of Law in Support at 5.  In so doing, Harris misinterprets the applicability of the exception.

[5]The Court notes that the Supreme Court in <u>Schriro v. Summerlin</u>, 124 S.Ct. 2519, 2522 (2004) recently clarified the doctrine regarding new rules decriminalizing conduct. ("We have sometimes referred to ...["rules that place particular conduct or persons covered by the statute beyond the State's power to punish"] ... as falling under an exception to <u>Teague</u>'s bar on retroactive application of procedural rules ...; they are more accurately characterized as substantive rules not subject to the bar.)

people.    See  Penry v. Lynaugh, 492 U.S. 302, 329-30
(1989)(concerning applicability of the death penalty under the
Eighth Amendment to the mentally retarded).   The Blakely rule, in
contrast, merely concerns whether a defendant's sentence is valid.

The second Teague exception is inapplicable because Blakely
does not meet the narrow requirement of being a watershed rule of
criminal procedure akin to the right to counsel.   See Lilly, 342
F.Supp.2d 532 at 538 n. 5 (finding that Blakely does not satisfy
the second Teague exception and citing eight other district courts
in accord). See also United States v. Sanders, 247 F.3d 139, 151
(4th Cir. 2001)(holding that the rule announced in Apprendi, the
precursor to Blakely, is not retroactively applicable to cases on
collateral review because it is not a watershed rule of criminal
procedure).

Because the rule in Blakely does not apply retroactively on
collateral review, Harris cannot attack his sentence on the basis
of any such alleged error.

## 2. **Merits**

Even if Blakely was held to apply retroactively on collateral
review, Harris's case still fails on the merits.

Harris argues that the trial judge departed from Virginia
sentencing guidelines. The sentencing guidelines set a period of
incarceration for voluntary manslaughter at two years, four months
to five years, eleven months, with the mid-range point being four

years, five months.  The trial judge, however, sentenced Harris to ten years imprisonment for this charge.  Harris argues that in deviating from the sentencing guidelines, the judge relied on Harris's prior conviction and his own findings that Harris used premeditation and aforethought, which were not disclosed to the jury, and that under <u>Blakely</u> a judge cannot increase a defendant's sentence beyond that authorized by the legislature based on facts not reflected in the jury verdict or admitted to by the defendant.

In <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000), a defendant had pled guilty to unlawful possession of a firearm, which carried a maximum statutory sentence of ten years.  At sentencing, the trial judge found by a preponderance of the evidence that the defendant had committed the crime with the purpose of intimidating the victim because of race.  <u>Id.</u> at 471.  Pursuant to a separate hate crimes statute, the judge enhanced the defendant's sentence to twelve years, beyond the prescribed statutory maximum of ten years. <u>Id.</u>  The Supreme Court held the enhancement beyond the statutory maximum to be a violation of the defendant's Sixth Amendment right to trial by jury because "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." <u>Id.</u> at 490.

The issue in <u>Blakely</u>, however, concerned the prescribed statutory maximum in Washington's determinate sentencing system

9

that would respect the Sixth Amendment. 124 S.Ct. at 2540.   In

Blakely, the defendant pled guilty to second-degree kidnapping, a

class B felony with a statutory maximum of ten years.  Id. at 2535.

Washington state's mandatory sentencing guidelines, however,

further limited the range of sentences a judge could impose to a

"standard range of 49-53 months.  Id.  A judge could impose an

"exceptional sentence" above the "standard range" after making

findings of fact and conclusions of law about additional

aggravating factors that would justify such a sentence.  Id.  These

findings and conclusions were subject to a clearly erroneous

standard on review.  Id.  After making a finding that the defendant

acted with deliberate cruelty – a statutorily enumerated ground for

an exceptional sentence in domestic-violence cases – the judge

imposed an exceptional sentence of ninety months or thirty-seven

months beyond the standard maximum of fifty-three months.  Id.  The

state argued that for Apprendi purposes, the ten-year statutory

maximum for class B felonies was the statutory maximum that no

exceptional sentence could exceed.

     Blakely held that, for Apprendi purposes, the statutory

maximum is:

> the maximum sentence a judge may impose <u>solely
> on the basis of the facts reflected in the
> jury verdict or admitted by the defendant.</u>  In
> other words, the relevant 'statutory maximum'
> is not the maximum sentence a judge may impose
> after finding additional facts, but the
> maximum he may impose <u>without</u> any additional
> findings."

Id. at 2537 (citations omitted)(emphasis in original).   The statutory maximum was the fifty-three month statutory maximum of the standard range for the offense; the judge could not have enhanced the sentence thirty-seven months based on the facts admitted in the guilty plea alone.

Apprendi held that judges have sentencing discretion within the statutorily prescribed range:

> We should be clear that nothing in this history suggests that it is impermissible for judges to exercise discretion – taking into consideration various factors relating both to offense and offender – in imposing a judgment within the range prescribed by statute. We have often noted that judges in this country have long exercised discretion of this nature in imposing sentence within statutory limits in the individual case.

Apprendi, 530 U.S. at 481 (emphasis in original).   Blakely expressly stated that indeterminate sentencing does not offend the Sixth Amendment.   Blakely, 124 S.Ct. at 2540.   Blakely also expressly distinguished McMillian v. Pennsylvania, 477 U.S. 79 (1986) and Williams v. New York, 337 U.S. 241 (1949) where it had upheld sentences within the statutory range supported by the verdict alone.   Id. at 2538.

In this case, Harris was convicted of voluntary manslaughter. Voluntary manslaughter is a Class 5 felony in Virginia.   Va. Code Ann. § 18.2-35 (Michie 2004).   Under state law, class 5 felonies are punishable by a maximum term of imprisonment of ten years.   Va. Code Ann. § 18.2-10 (Michie 2004).   While Virginia does have

sentencing guidelines, the guidelines are discretionary. Va. Code.
Ann. § 19.2-298.01 (Michie 2004).

> [T]he Virginia discretionary sentencing
> guidelines provide only flexible guideposts
> for the trial judge to consider in determining
> the appropriate sentence within the range of
> punishment defined by the legislature.
> Although the trial judge must provide a
> written explanation for departure from the
> guidelines, <u>see</u> Code § 19.2-298.01(B), <u>the
> judge is not bound by a presumptive range and
> need not justify the decision by any
> standard</u>.... The statute also precludes
> appellate review of the sentence. <u>See</u> Code
> § 19.2-298.01(F). Furthermore, the revision
> of the guidelines is left to the discretion of
> the sentencing commission and does not require
> approval by the legislature.

<u>Luttrell v. Commonwealth</u>, 42 Va. App. 461, 467-68, 592 S.E.2d 752
(2004)(emphasis added). Thus, unlike in <u>Blakely</u> where Washington's
sentencing guidelines are codified and mandatory for judges to
apply in determining sentences, Virginia's sentencing guidelines
are not enacted by the legislature[6] and are not binding on trial
judges. Application of the sentencing guidelines is voluntary and
a trial judge may set the sentence at any length within the range
established by the legislature. <u>Belcher v. Commonwealth</u>, 17 Va.
App. 44, 45, 435 S.E.2d 160, 161 (1993). Thus, the statutory
maximum established by the legislature is the maximum provided by
the relevant Virginia statute.

---

[6]The sentencing guidelines used by Virginia courts are
established by the Virginia Sentencing Commission. Va. Code. Ann.
§ 17.1-805 (Michie 2004).

In this case, Virginia Code §§ 18.2-10 and 18.2-35 provide that the statutory maximum sentence for voluntary manslaughter is ten years.  In other words, the trial judge may impose the maximum sentence of ten years at his discretion " taking into consideration various factors relating both to offense and offender" without any additional findings.  <u>Apprendi</u>, 530 U.S. at 481.  Thus, the trial judge's sentencing of Harris to ten years imprisonment on the voluntary manslaughter charge does not run afoul of <u>Apprendi</u>/<u>Blakely</u>.

## B. Equal Protection Claim

Harris's second claim is that in light of <u>Blakely</u>, Virginia Code § 16.1-272, which provides for court sentencing of juveniles tried as adults, violates his equal protection rights under the Fourteenth Amendment.[7]

---

[7]Pursuant to Virginia statute, the jury sentences adults in a jury trial. Va. Code Ann. § 19.2-295 (Michie 2004)("Within the limits prescribed by law, the term of confinement ... of a person convicted of a criminal offense , shall be ascertained by the jury, or by the court in cases tried without a jury.")  Where juveniles are tried as adults, however, Section 16.1-272 provides that the court, not the jury, will determine the sentence:

> In any case in which a juvenile is indicted, the offense for which he is indicted and all ancillary charges shall be tried in the same manner as provided for in the trial of adults, except as otherwise provided with regard to sentencing. Upon a finding of guilty of any charge other than capital murder, the court shall fix the sentence without the intervention of a jury.

Va. Code Ann. § 16.1-272(A) (Michie 2004).  This statute further

As discussed supra, Blakely is not retroactive to cases on collateral review. Therefore, as with Harris's first claim, Harris may not rely on Blakely as a ground for filing his habeas petition.[8]

## 1. **Procedural Default**

Harris's equal protection claim was not raised in his direct appeal and was raised for the first time in the instant petition. Generally, a § 2254 petitioner must exhaust his claims in state court before they may be heard in federal court. Clagett v. Angelone, 209 F.3d 370, 378 (4th Cir. 2000); Matthews v. Evatt, 105 F.3d 907, 910 (4th Cir. 1997).[9]   If his claims were not exhausted

_____

provides the court with discretion in sentencing the juvenile to adult penalties or juvenile penalty alternatives. § 16.1-272(A)(1).

[8]The Court notes that even if Blakely were retroactive to cases on collateral review, it is inapposite to Harris's equal protection claim. It appears that Harris misinterprets Blakely to establish a constitutional right to have a jury determine sentencing. Harris asserts, "Blakely clearly recognizes that defendants do indeed have a 6th Amendment right to have their entire trial, including the sentence, determined by a jury based on facts expressly found by said jury;" See Memorandum of Law in Support of § 2254 Petition at 5 (emphasis in original). As discussed supra, however, Blakely, merely establishes that the statutory maximum sentence that a judge may impose is the maximum sentence that can be imposed "solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." Blakely, 124 S.Ct. at 2537.

[9]A petitioner typically meets this exhaustion requirement by "fairly present[ing] his claim to the state's highest court." Matthews, 105 F.3d at 911. The purpose of the exhaustion doctrine is to give "state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts." O'Sullivan v Boerckel, 526 U.S. 838, 846

in state court, but would now be procedurally barred if brought in state court pursuant to an adequate and independent state procedural rule, the claims are procedurally defaulted in federal court and federal habeas review is ordinarily barred.  <u>Coleman v. Thompson</u>, 501 U.S. 722, 750 (1991).

---

(1999).  Where a petitioner presents a claim in federal court that was not previously presented in state court, but that claim would now be barred from consideration by the state court under state procedural rules, federal courts have generally followed one of two different approaches.  Under the first approach, the court considers the exhaustion requirement met because state remedies are unavailable.  <u>See</u> <u>Teague v. Lane</u>, 489 U.S. 288, 297-98 (1989) ("It is clear that collateral relief would be unavailable to petitioner. As a result, petitioner has exhausted his state remedies under 28 U.S.C. § 2254(b) . . . .") (citation omitted); <u>Matthews</u>, 105 F.3d at 911 ("[T]he exhaustion requirement for claims not fairly presented to the state's highest court is technically met . . . when a state procedural rule would bar consideration if the claim was later presented to the state court.") (citations omitted).  The second approach simply holds that exhaustion is not required if there is a procedural bar to bringing the claim in state court. <u>See</u> <u>Coleman v. Thompson</u>, 501 U.S. 722, 735 n.1 (1991):

> [I]f the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred . . . there is a procedural default for purposes of federal habeas regardless of the decision of the last state court to which the petitioner actually presented his claims.

<u>See also</u> <u>Clagett</u>, 209 F.3d at 378; <u>Bassette v. Thompson</u>, 915 F.2d 932, 937 (4th Cir. 1990) ("[W]hen it is clear that the state law would bar state review, exhaustion is not required, and federal review is precluded.").  This Report and Recommendation adopts the latter approach as <u>Clagett</u> is the more recent expression of the rule by the Fourth Circuit, which likewise relies on the more recent expression of the United States Supreme Court on the matter. Notably, the same result is reached under either approach: the petitioner's claims are procedurally defaulted in federal court.

15

Under Slayton v. Parrigan, 205 S.E.2d 680, 682 (Va. 1974) a claim is procedurally defaulted if it could have been raised at trial or on direct appeal.  The Fourth Circuit has expressly recognized "that the procedural default rule set forth in Slayton constitutes an adequate and independent state law ground for decision." Mu'min v. Pruett, 125 F.3d 192, 196 (4th Cir. 1997); see also Thomas v. Taylor, 170 F.3d 466, 475 (4th Cir. 1999); Wright v. Angelone, 151 F.3d 151, 159-60 (4th Cir. 1998).  Harris could have raised his equal protection claim in his direct appeal. Accordingly, claim (b) is procedurally defaulted before this Court.

## 2. Exceptions to Procedural Default

Although Harris's claim is procedurally defaulted, he may still obtain review of his claims on the merits if he can establish either: (1) cause for the default and demonstrate actual prejudice as a result of the alleged violation of federal law, or (2) that failure to consider the claims will result in a fundamental miscarriage of justice because he is actually innocent of the crime for which he is convicted.  Clagett, 209 F.3d at 379 (citing Coleman, 501 U.S. at 750); Weeks, 176 F.3d at 269.

Cause refers to "some objective factor external to the defense [that] impeded counsel's efforts to comply with the State's procedural rule." Strickler v. Greene, 527 U.S. 263, 283 n.24 (1999)(quoting Murray v. Carrier, 477 U.S. 478, 488 (1986). "Objective factors that may constitute 'cause' include: (1)

16

interference by officials that makes compliance with the State's procedural rule impracticable;' 'a showing that the factual or legal basis for a claim was not reasonably available to counsel;' (3) novelty of the claim; and (4) constitutionally ineffective assistance of counsel." Wright v. Angelone, 151 F.3d 151, 160 n.5 (4th Cir. 1998)(quoting McCleskey v. Zant, 499 U.S. 467, 493-94 (1991).  An absence of due diligence by the petitioner will defeat an assertion of cause.  See Hoke v. Netherland, 92 F.3d 1350, 1354 n.1 (4th Cir. 1996).

Although Harris argues that Blakely, decided on June 24, 2004 provided him cause because it provided a novel basis for a claim, as discussed supra, the Court finds that Blakely is not relevant to Harris's claim (b).  The Court finds that Harris has not demonstrated cause.

It is also the petitioner's burden to demonstrate "actual prejudice" by demonstrating "not merely that the errors at his trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." McCarver v. Lee, 221 F.3d 583, 592 (4th Cir. 2000).  Harris has not satisfied this burden.  Finally, Harris does not claim that the "miscarriage of justice" exception applies – he does not claim that he is "actually innocent" of voluntary manslaughter for which he was convicted. See, e.g., Wright, 151 F.3d at 160.

Therefore, this Court recommends denying the petition with respect to claim (b).

## C. <u>Conclusion</u>

Harris's Sixth Amendment <u>Blakely</u> claim fails because the rule in <u>Blakely</u> does not apply retroactively on collateral review and thus does not provide grounds for attacking his sentence. Alternatively, even if <u>Blakely</u> was retroactive, Harris's claim fails on the merits because the trial judge did not exceed the statutory maximum when he exceeded the Virginia sentencing guidelines. The Virginia guidelines are not binding on sentencing judges. In addition, any departure need not be justified by any standard and is not subject to appellate review provided that it does not exceed the statutory maximum.

Although Harris also raises <u>Blakely</u> in connection with his equal protection claim, <u>Blakely</u> does not apply retroactively to collateral cases and even if it did, it has no application to this claim. Harris raised his equal protection claim for the first time before this Court. Were he to raise it in a state habeas petition, the claims would be procedurally defaulted under an independent and adequate state procedural rule, and thus it is procedurally defaulted before this Court as well. Harris is unable to demonstrate cause and prejudice or a miscarriage of justice to excuse his procedural default.

Accordingly, the Court RECOMMENDS denial of both his claims.

## IV. **RECOMMENDATION**

For the foregoing reasons, the Court recommends that Harris's petition for writ of habeas corpus be DENIED, the respondent's motion to dismiss be GRANTED, and both Harris's claims be DISMISSED WITH PREJUDICE.

The petitioner has failed to demonstrate "a substantial showing of the denial of a constitutional right." Therefore, it is recommended that the Court decline to issue any certificate of appealability pursuant to Rule 22(b) of the Federal Rules of Appellate Procedure. See Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003).

## V. **REVIEW PROCEDURE**

By copy of this Report and Recommendation, the parties are notified that:

1. Any party may serve upon the other party and file with the Clerk specific written objections to the foregoing findings and recommendations within ten (10) days from the date of mailing of this report to the objecting party, see 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure, plus three (3) days permitted by Rule 6(e) of said rules. A party may respond to another party's specific objections within ten (10) days after being served with a copy thereof. See Fed. R. Civ. P. 72(b).

2. A district judge shall make a de novo determination of those

portions of this report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in a waiver of the right to appeal from a judgment of this Court based on such findings and recommendations.  <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>Carr v. Hutto</u>, 737 F.2d 433 (4th Cir. 1984); <u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir. 1984).

ENTERED this 19th day of July, 2005.

/s/
F. Bradford Stillman
United States Magistrate Judge

**Clerk's Mailing Certificate**

A copy of the foregoing Report and Recommendation was mailed

this date to the following:

Arlando R. Harris, #289056
Haynesville Correctional Center
P.O. Box 129
Haynesville, Virginia 22472-0129


Amy L. Marshall
Office of the Attorney General
900 E. Main Street
Richmond, Virginia 23219



Elizabeth H. Paret, Clerk


By: _____
Deputy Clerk

July    , 2005